# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE PG&E CORPORATION SECURITIES LITIGATION | Civil Action No. 5:18-cv-03509-EJD<br><br>UPDATED JOINT STATUS REPORT |

On January 29, 2019, both PG&E Defendants[1] in the above-captioned securities class action filed for bankruptcy protection. *See In re PG&E Corporation, et al.* (the "Chapter 11 Proceeding"), Case No. 19-30088 (Bankr. N.D. Cal.), ECF No. 1.

On October 4, 2019, the non-PG&E Defendants filed motions to dismiss Plaintiffs' Third Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [ECF Nos. 148, 155], which motions were fully briefed January 13, 2020.

---

[1] The parties refer to the two corporate Defendants, PG&E Corporation (the publicly traded holding company) and Pacific Gas & Electric Company (its wholly-owned utility), collectively as "PG&E."

On June 20, 2020, the bankruptcy court entered an order (the "Confirmation Order") confirming PG&E's Chapter 11 Plan of Reorganization (the "Plan"). *See* Chapter 11 Proceeding, Confirmation Order, ECF No. 8053; *see also* Plan, ECF No. 8053-1 (Ex. A to Confirmation Order).

On March 30, 2021, this Court directed the parties to file an updated status report on the progress of the Chapter 11 Proceeding, and in particular, to advise this Court on the status of the shareholder claims asserted therein against PG&E. ECF No. 192. The Parties provide the following Updated Joint Status Report in response.

## LEAD PLAINTIFF'S POSITION

We represent the Public Employees Retirement Association of New Mexico ("PERA" or "Lead Plaintiff"), the Court-appointed lead plaintiff in the above-captioned consolidated action.

### I.   Background

In the Chapter 11 Proceeding, the Plan classifies and treats securities claims against PG&E, with two crucial caveats.

First, the Plan acknowledges that its treatment of shareholder claims does not fully compensate those claimants, conceding that these claims are "subordinated" by the Bankruptcy Code and "impaired" (not paid in full) under the Plan. *See* Plan §§ 1.108 (subordination) & 4.14(b) (impairment).

Second, the Plan is explicit that it provides only for PG&E's "claim share," which is an amount less than full damages. Rather than paying subordinated shareholder claims in full and in cash, the Plan instead provides that shareholder claims are to be paid at reduced amounts in shares of reorganized PG&E's common stock – and only if such claims are first "allowed" by the bankruptcy court. The extent of reduction is complicated. PG&E's "claim share" reduction is calculated by (a) taking the full amount of "an Allowed HoldCo Rescission or Damage Claim,"

then (b) subtracting an "Insurance Deduction,"[2] after which (c) this reduced total is then further reduced through division by a factor of 65, or 46.5, or 37.25, or 32.5. *Id.* § 1.108 (defining "HoldCo Rescission or Damage Claim Share"). The Plan contains an algorithm for determining which of the four division factors is used by comparing (i) the purchase date of a given share to (ii) four of the nine dates on which PG&E's stock price is alleged in this Action to have declined because of fraud.[3] *Id.*

While acknowledging the particulars of these claims, PG&E has also stated that it intends to dispute them on various grounds. *See, e.g.*, Chapter 11 Proceeding, Debtors' Confirmation Brief, ECF No. 7528 at 70 & n.23.

Both the Plan and the Confirmation Order expressly provide that they do not have any direct impact on securities claims asserted against PG&E's non-debtor officers, directors, or underwriters. *See* Confirmation Order ¶ 52(c); Plan § 10.9(c) ("[N]othing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release, satisfaction, compromise,

---

[2] The Plan defines the "Insurance Deduction" as "any cash payments received from an Insurance Policy (other than cash payments received from a Side A Policy) on account of all or any portion of an Allowed HoldCo Rescission or Damage Claim, to be applied proportionally in accordance with . . . the definition of 'HoldCo Rescission or Damage Claim Share' above." Plan § 1.127A. Lead Plaintiff believes that this provision is improper; it has appealed the Confirmation Order on the grounds that such deductions are permissible under federal law ***only*** to ensure that recoveries do not exceed 100% of claim values, yet this Insurance Deduction reduces claims with no such limitation. *See Public Employees Retirement Association of New Mexico v. PG&E Corporation et al*, Case No. 20-cv-01708. The appeal is fully briefed and submitted, and it also has a pending, fully briefed motion to dismiss.

[3] The Plan also includes two "classes" (in the bankruptcy sense, not in the Rule 23 sense) for debt purchaser claims. *See* Plan §§ 4.12, 4.32.

settlement or discharge of a holder of a Claim or Cause of Action in favor of a party that is not a Debtor . . .").

## II.  Status of the Securities Claims in the Chapter 11 Proceeding

To date, over 7,100 securities claims have been filed in the bankruptcy court, listing claim amounts totaling in the billions of dollars.[4]  In the Summer and Fall of 2020, Lead Plaintiff and PG&E submitted competing proposals for how these claims should proceed in bankruptcy court.

Lead Plaintiff proposed that a class of these claimants be certified by the bankruptcy court for disposition of common issues.  *See* Chapter 11 Proceeding, ECF No. 9152.  PG&E proposed that the bankruptcy court begin implementing claims reconciliation procedures (*e.g.,* objections to securities claims), as well as authorize PG&E to engage in a three-pronged ADR process for some, but not all, of these claims.  The proposal would be defined by more than 50 pages of rules and procedures that PG&E submitted.  Chapter 11 Proceeding, ECF No. 8964 (the "Claims Procedure and ADR Motion").

Lead Plaintiff opposed PG&E's Claims Procedure and ADR Motion (Chapter 11 Proceeding, ECF No. 9189), and more than 50 claimants filed notices joining Lead Plaintiff's proposal and/or Lead Plaintiff's opposition to PG&E's proposal.  These claimants ranged from *pro se* individuals to prominent institutional investors such as CalPERS, CalSTRS, and Chevron.  In contrast, no claimants ultimately joined PG&E's ADR proposal, or its opposition to Lead Plaintiff's class certification proposal.  The bankruptcy court adopted PG&E's Claims Procedure

---

[4] This number of filings comprises closer to **10,000** actual claimants, after so-called "bulk" claims – single claim forms listing multiple claimants – are counted as additional claimants. The total amount of asserted damages is impossible to report precisely because roughly half of the claimants identify their claim damages as "unliquidated," *i.e.*, with amounts to be determined at a later date. The aggregated total of the other, ***liquidated*** claims alone exceeds $8 billion. *See* https://restructuring.primeclerk.com/pge/Home-ClaimInfo?RescissionorDamage=MTY= (PG&E's bankruptcy claims administration website listing all filed securities claims).

and ADR proposal, with revisions, and the following qualification: "If it turns out that the offer and acceptance, mediation, and related [ADR] procedures failed significantly, we can revisit the question of whether remaining securities fraud claimants would be better served by some variation on a Rule 7023 [class certification] process." *See* Chapter 11 Proceeding ECF No. 9752, Tr. of Hearing dated 12/4/2020 at 9:2-6.  Through this process, PG&E will be able to treat thousands of investors – all of whom have suffered the same harms – differently, based on who can afford to pay for legal representation and experts to appropriately evaluate the damages at issue.

PG&E has recognized that, should claimants and PG&E not reach agreement through the Claims Procedure and ADR process, then the bankruptcy court "may be asked to decide the merits" of those claims.  *See* Chapter 11 Proceeding, ECF No. 9582, Tr. of Hearing dated 11/18/2020 at 12:6-15.

As of this writing, Lead Plaintiff is not aware of a single securities claim in the Chapter 11 Proceeding being resolved, through the Claims Procedure and ADR process or otherwise.

Lead Plaintiff, as well as Plaintiffs York County on behalf of County of York Retirement Fund ("York County"), City of Warren Police and Fire Retirement System ("City of Warren"), and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund ("Mid-Jersey") are excluded from the ADR procedures.  *See* Chapter 11 Proceeding, ECF No. 10015-1 at 5.  Thus, at some point, the bankruptcy court will face the merits of the claims against PG&E that are also at issue in the securities action before this Court.  The scope of discovery that will be permitted on the merits as to these claims is undetermined.  A further open issue remains regarding possible withdrawal of the reference from the bankruptcy court before that point, so an Article III court can adjudicate the complex federal securities questions at issue rather than the bankruptcy court.  *See* Section III, *infra*.

**III.    Overlap of Issues before this Court and Risk of Inconsistent Decisions**

Lead Plaintiff maintains its position from its prior Status Letter dated August 7, 2020: that the Chapter 11 Proceeding "will necessarily involve addressing identical issues this Court may be called on to consider, including whether the 19 asserted false and misleading statements made over three-and-a-half years are actionable (including the elements of falsity, materiality, and scienter),

as well as whether and to what extent these statements caused investor losses over the nine asserted loss causation events," and as a result, "bankruptcy claim resolution proceedings may be conducted in parallel with the Securities Action here, including to judgment and, potentially, to inconsistent judgments on identical issues." ECF No. 185 at 4, 5. Yet – it bears emphasizing – Congress has conferred authority over such matters to Article III (not Article I) courts. *See* 15 U.S.C. § 78aa(a). Accordingly, it may very well become appropriate at some point for this Court to withdraw the reference to the bankruptcy court as to these issues.

Some issues have already become ripe. As just one example, PG&E recently asked the bankruptcy court to reject proofs of claim for securities sold prior to October 12, 2017 (which is the first date on which shareholders are alleged to have been injured by the asserted fraud), reasoning that no sold securities could have incurred harm under a traditional Section 10(b) damages analysis. *See* Chapter 11 Proceeding, ECF No. 10411. But, critically, PG&E seeks this relief against not only stock claimants but also debt-securities claimants, even though many debt securities are covered by Section 11 and subject to a different damages analysis than Section 10(b) – indeed, one set by statute and not based on the events of October 12, 2017. *See* 15 U.S.C. § 77k(e). Put simply, these debt claimants still have cognizable damages under the Section 11 damages statute even if their losses occurred prior to October 12, 2017. By apparently seeking to have some debt-securities claims rejected based on an inapposite Section 10(b) damages analysis, PG&E raises a complex matter of federal securities laws more appropriately directed to an Article III court.

\*   \*   \*

We are available to participate in a status conference or take any further direction from this Court on this matter.

**DEFENDANTS' POSITION**

As reported in the separate status report filed by PG&E, it emerged from Chapter 11 Proceedings on June 20, 2020 as a solvent debtor. In connection with the procedures order entered by Judge Montali, a process is ongoing to resolve pre-petition securities claims asserted

against PG&E by more than 7,000 current and former PG&E securities holders. As set forth in PG&E's Plan and the Confirmation Order, the unmatured notes at issue in this Action were reinstated.

While Defendants expect that the ongoing bankruptcy claim process will affect, among other things, the size and potential damage claims of the putative classes in this Action, Defendants believe that their pending motions to dismiss present this Court with clear grounds for dismissal with prejudice of the securities claims asserted against the non-PG&E Defendants.

Defendants take no position with regard to the potential issues raised by Lead Plaintiff about PG&E's bankruptcy claims resolution process.

| | | |
|---|---|---|
| 1 | DATED: April 9, 2021 | /s/ Thomas A. Dubbs |
| 2 | | Thomas A. Dubbs (*pro hac vice*) |

LABATON SUCHAROW LLP
THOMAS A. DUBBS (*pro hac vice*)
CAROL C. VILLEGAS (*pro hac vice*)
JEFFREY A. DUBBIN (#287199)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: tdubbs@labaton.com
cvillegas@labaton.com
jdubbin@labaton.com

*Counsel for Lead Plaintiff the Public Employees Retirement Association of New Mexico*

WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP
JAMES M. WAGSTAFFE (#95535)
FRANK BUSCH (#258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone: (415) 357-8900
Facsimile: (415) 371-0500
Email: wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for the Class*

ROBBINS GELLER RUDMAN & DOWD LLP
WILLOW E. RADCLIFFE (#200087)
KENNETH J. BLACK (#291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
DARREN J. ROBBINS (#168593)
BRIAN E. COCHRAN (#286202)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
bcochran@rgrdlaw.com

*Counsel for the Securities Act Plaintiffs*

VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
Email: tmichaud@vmtlaw.com

*Additional Counsel for the Securities Act Plaintiffs*


SIMPSON THACHER & BARTLETT LLP


*/s/ Stephen P. Blake*
Stephen P. Blake

STEPHEN P. BLAKE (SBN 260069)
2475 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002
Email:

PAUL C. CURNIN (*pro hac vice*)
NICHOLAS S. GOLDIN (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
Email: pcurnin@stblaw.com
ngoldin@stblaw.com
rachel.sparksbradley@stblaw.com

*Attorneys for Defendant Directors Barbara L. Rambo, Lewis Chew, Fred J. Fowler, Richard C. Kelly, Roger H. Kimmel, Richard A. Meserve, Forrest E. Miller, Maryellen C. Herringer, Barry Lawson Williams, Rosendo G. Parra, Anne Shen Smith and Eric D. Mullins*


DAVIS POLK & WARDWELL LLP

*/s/ Neal A. Potischman*
Neal A. Potischman

CHARLES S. DUGGAN (*pro hac vice*)
DANA M. SESHENS (*pro hac vice*)
CRAIG T. CAGNEY (*pro hac vice*)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: charles.duggan@davispolk.com
dana.seshens@davispolk.com
craig.cagney@davispolk.com

NEAL A. POTISCHMAN (SBN 254862)
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email: neal.potischman@davispolk.com

*Attorneys for Defendant Underwriters*

McDERMOTT WILL & EMERY LLP

*/s/ Jason D. Strabo*
Jason D. Strabo

MICHAEL A. PIAZZA (State Bar No. 235881)
GREGORY R. JONES (State Bar No. 229858)
JASON D. STRABO (State Bar No. 246426)
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3218
Telephone: (310) 277 4110
Facsimile: (310) 277 4730
Email: PG&E@mwe.com

STEVEN S. SCHOLES (admitted *pro hac vice*)
444 West Lake Street
Chicago, IL 60606-0029
Telephone: (312) 372-2000
Facsimile: (310) 984-7700
PG&E@mwe.com

*Attorneys for Defendants Anthony F. Earley, Jr., Patrick M. Hogan, Christopher P. Johns, Julie M. Kane, Dinyar B. Mistry, Nickolas Stavropoulos, David S. Thomason, and Geisha J. Williams*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 9, 2021 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

                                        */s/ Thomas A. Dubbs*
                                        THOMAS A. DUBBS