**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: PG&E CORPORATION SECURITIES LITIGATION, | No. 22-16711 |
| ------------------------------ | D.C. No. 5:18-cv-03509-EJD |
| PUBLIC EMPLOYEES RETIREMENT ASSOCIATION OF NEW MEXICO, The Class; YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND; CITY OF WARREN POLICE AND FIRE RETIREMENT SYSTEM; MID-JERSEY TRUCKING INDUSTRY & LOCAL NO. 701 PENSION FUND, | OPINION |
| *Plaintiffs-Appellants*, | |
| v. | |
| ANTHONY F. EARLEY, Jr.; GEISHA J. WILLIAMS; NICKOLAS STAVROPOULOS; JULIE M. KANE; CHRISTOPHER P. JOHNS; PATRICK M. HOGAN; BARBARA L. RAMBO; DAVID S. THOMASON; DINYAR B. MISTRY; | |

LEWIS CHEW; FRED J. FOWLER;
MARYELLEN C. HERRINGER;
RICHARD C. KELLY; ROGER H.
KIMMEL; RICHARD A. MESERVE;
FORREST E. MILLER; BARRY
LAWSON WILLIAMS; ROSENDO
G. PARRA; ANNE SHEN SMITH;
ERIC D. MULLINS; BARCLAYS
CAPITAL, INC.; BNP PARIBAS
SECURITIES CORPORATION;
MORGAN STANLEY & CO. LLC;
MUFG SECURITIES AMERICAS,
INC.; WILLIAMS CAPITAL
GROUP, L.P., AKA Siebert Williams
Shank  Co., LLC; CITIGROUP
GLOBAL MARKETS, INC.; J.P.
MORGAN SECURITIES, LLC;
MERRILL LYNCH, PIERCE
FENNER & SMITH, INC, AKA B of
A Securities, Inc.; MIZUHO
SECURITIES USA LLC;
GOLDMAN SACHS & CO; RBC
CAPITAL MARKETS, LLC; WELLS
FARGO SECURITIES, LLC; BNY
MELLON CAPITAL MARKETS,
LLC; TD SECURITIES (USA), LLC;
C. L. KING & ASSOCIATES, INC.;
GREAT PACIFIC SECURITIES;
CIBC WORLD MARKETS CORP.;
SMBC NIKKO SECURITIES
AMERICA, INC.; U. S. BANCORP
INVESTMENTS, INC.; MISCHLER
FINANCIAL GROUP, INC.;

BLAYLOCK VAN, LLC; SAMUEL
A. RAMIREZ & COMPANY, INC.;
MFR SECURITIES, INC.,

*Defendants-Appellees*,

and

PG&E CORPORATION,

*Defendant*.

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted September 13, 2023
San Francisco, California

Filed May 3, 2024

Before: J. Clifford Wallace, Danny J. Boggs,* and Danielle
J. Forrest, Circuit Judges.

Opinion by Judge Forrest

---

* The Honorable Danny J. Boggs, United States Circuit Judge for the U.S.
Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Bankruptcy Stay

The panel vacated the district court's order staying a securities fraud action pending completion of a Chapter 11 bankruptcy case and remanded.

A group of retirement and pension funds filed a consolidated putative securities class action against PG&E Corp. and Pacific Gas & Electric Co. (collectively, PG&E) and some of its current and former officers, directors, and bond underwriters (collectively, Individual Defendants). PG&E filed for Chapter 11 bankruptcy, automatically staying this action as against PG&E but not the Individual Defendants. The district court then *sua sponte* stayed these proceedings as against the Individual Defendants.

The panel held that it had jurisdiction over this interlocutory appeal under the *Moses H. Cone* doctrine because the stay was both indefinite and likely to be lengthy.

The panel held that the district court abused its discretion in ordering the stay as to the Individual Defendants. When deciding to issue a docket management stay, the district court must weigh three non-exclusive factors: (1) the possible damage that may result from the granting of a stay; (2) the hardship or inequity that a party may suffer in being required to go forward; and (3) judicial efficiency. As to judicial efficiency, the district court properly concluded that the bankruptcy court's initial determination of identical

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

factual and legal issues could promote efficient adjudication of the claims presented in this action. The district court, however, did not adequately consider whether the stay imposed hardship on plaintiffs that outweighed the efficiencies to be gained by the stay. The panel vacated the stay and remanded for the district court to weigh all the relevant interests in determining whether a stay was appropriate.

## COUNSEL

Carol C. Villegas (argued), Jeffrey A. Dubbin, Thomas A. Dubbs, and Michael P. Canty, Labaton Keller Sucharow LLP, New York, New York; Darren J. Robbins, Robbins Geller Rudman & Dowd LLP, San Diego, California; Willow E. Radcliffe, Robbins Geller Rudman & Dowd LLP, Nashville, Tennessee; Hadiya Deshmukh, Robbins Geller Rudman & Dowd LLP, San Francisco, California; James M. Wagstaffe, Adamski Moroski Madden Cumberland & Green LLP, San Luis Obispo, California; Frank Busch, Coblentz Patch Duffy & Bass LLP, San Francisco, California; for Plaintiffs-Appellants.

Stephen P. Blake (argued) and Jonathan Sanders, Simpson Thacher & Bartlett LLP, Palo Alto, California; Jonathan Youngwood, Simpson Thacher & Bartlett LLP, New York, New York; Steven S. Scholes, McDermott Will & Emery LLP, Chicago, Illinois; Jason D. Strabo, McDermott Will & Emery LLP, Los Angeles, California; Neal A. Potischman, Davis Polk & Wardwell LLP, Menlo Park, California; Charles S. Duggan, Dana M. Seshens, and Craig T. Cagney, Davis Polk & Wardwell LLP, New York, New York; for Defendants-Appellees.

## OPINION

FORREST, Circuit Judge:

Following several wildfires in Northern California in 2017 and 2018, a group of retirement and pension funds filed this consolidated putative securities class action against PG&E Corporation and Pacific Gas & Electric Company (collectively, PG&E) and some of its current and former officers, directors, and bond underwriters (collectively, Individual Defendants), alleging that all the Defendants made false or misleading statements related to PG&E's wildfire-safety policies and regulatory compliance. Shortly after lead plaintiff Public Employees Retirement Association of New Mexico (PERA) and the other retirement and pension funds (collectively, Plaintiffs) filed the operative complaint, PG&E filed for Chapter 11 bankruptcy, automatically staying this action as against PG&E but not the Individual Defendants. The district court then *sua sponte* stayed these proceedings as against the Individual Defendants, pending completion of PG&E's bankruptcy case. In this interlocutory appeal, Plaintiffs argue that the district court abused its discretion by entering the stay.

We have jurisdiction over this appeal under the so-called *Moses H. Cone* doctrine. We conclude that the district court abused its discretion in ordering the stay as to the Individual Defendants, vacate the stay, and remand with instructions.

## I.  BACKGROUND

### A.  Plaintiffs' Securities-Fraud Action

In June 2018, a PG&E shareholder filed a putative class action against PG&E and some of its current and former

officers for violating the Securities Exchange Act of 1934
(Exchange Act). The district court consolidated that
shareholder's case with other similar cases, and Plaintiffs
jointly filed the operative third amended consolidated class-
action complaint (Complaint) in May 2019. The Complaint
asserts two categories of federal securities claims against
three groups of defendants. The first category of claims
arises under the Exchange Act and is asserted against PG&E
and six current or former PG&E officers. The second
category of claims arises under the Securities Act of 1933
(Securities Act) and is asserted against former PG&E
officers and directors and over 20 financial institutions that
participated in certain PG&E note offerings.[1]

Plaintiffs' claims against PG&E and the Individual
Defendants are based on nearly identical legal theories and
factual allegations. The Exchange Act claims are based on
19 allegedly false or misleading statements that PG&E and
the Individual Defendants made between April 29, 2015, and
November 15, 2018.[2] These statements concern numerous
complex issues relating to PG&E's wildfire-safety policies
and regulatory oversight. Plaintiffs' Securities Act claims
are based on substantially similar alleged
misrepresentations. Plaintiffs allege that the prospectus
filings for three PG&E note offerings and one note-exchange
offer that took place between March 2016 and April 2018
contained or incorporated statements that misleadingly

---

[1] PG&E was not named in the Securities Act claims because the
bankruptcy court's automatic stay was in place.

[2] The Exchange Act claims are brought on behalf of a putative class of
"all persons and entities who, during the period from April 29, 2015,
through November 15, 2018, . . . purchased or otherwise acquired
publicly traded PG&E securities."

omitted material information about PG&E's regulatory compliance, vegetation-management practices, and equipment inspections and maintenance.[3]

The Individual Defendants filed two motions to dismiss in October 2019. The parties completed briefing on those motions, and they were submitted for decision in the district court, in January 2020. Those motions remain pending.

### B. PG&E's Bankruptcy Case

In January 2019, a few months before Plaintiffs filed the Complaint, PG&E filed for Chapter 11 bankruptcy. Accordingly, this action was automatically stayed as to PG&E under 11 U.S.C. § 362. The bankruptcy court confirmed PG&E's Plan of Reorganization (Plan) in June 2020, which provided for PG&E's emergence from bankruptcy as a solvent debtor on July 1, 2020. The Plan did not extend the automatic bankruptcy stay to the Individual Defendants and, with some limitations, explicitly permitted continued prosecution of this action against those defendants.

The Plan provided for the bankruptcy court's continued jurisdiction over certain claims asserted against PG&E, including federal securities claims brought by shareholders in the bankruptcy case by way of proofs of claim. The Plan treats these "shareholder claims as 'subordinated'"— meaning that, if they succeed, they "are to be paid at reduced amounts in shares of reorganized PG&E's common stock."

Earlier in the bankruptcy proceedings, Plaintiffs sought to pursue their securities claims against PG&E through a

---

[3] The Securities Act claims are brought on behalf of "all persons or entities that acquired PG&E senior notes in or traceable to one or more of the Notes Offerings and corresponding Offering Documents."

class-action procedure. They moved the bankruptcy court to treat their claims as "class proofs of claim" and to appoint PERA (the lead Plaintiff here) as lead claimant for the class. They presented to the bankruptcy court the Complaint in this case and expressly incorporated its claims and allegations into their securities claims filed in the bankruptcy court. Further, Plaintiffs sought to define the proposed bankruptcy class as "the proposed class [PERA] represents" in this action, and made clear that the proposed bankruptcy class's claims "are based solely on the allegations in the [Complaint]."

The bankruptcy court denied Plaintiffs' request for class treatment in January 2021, and instead adopted a specialized multi-step alternative-dispute-resolution procedure (the securities-claims ADR) to "facilitate and simplify the resolution of" the securities claims filed in the bankruptcy case.[4] The securities-claims ADR allows individual claimants to submit trading information; make and receive settlement offers; and, if necessary, mediate with PG&E. Securities claims in the bankruptcy case that are not resolved through settlement or mediation ultimately proceed to a "claims reconciliation and objection process" before the bankruptcy court. The parties appear to agree that this claims-reconciliation process necessarily will require the bankruptcy court to address the merits of the securities claims raised in this litigation.

---

[4] The securities-claims ADR applies to shareholders who filed proofs of claim in PG&E's bankruptcy case alleging losses "related to purchases of publicly-traded PG&E . . . securities as a result of alleged inadequate or fraudulent disclosures or non-disclosures of information from April 29, 2015 through November 15, 2018."

As of April 9, 2021, more than 7,100 securities claims
had been filed in the bankruptcy case, totaling in the billions
of dollars. Approximately 1,600 of those claims have settled
through the securities-claims ADR, and many more remain
pending. PG&E and the Individual Defendants represent that
all settlements with securities claimants in the bankruptcy
case "have also resolved those claimants' putative claims in
this [a]ction" through releases of claims.[5]

## C. The District Court's Notice of Intent to Stay

In April 2021, well over a year after the Individual
Defendants' motions to dismiss were ripe for decision, the
district court issued a Notice of Intent to Stay (Notice) this
action based on the parties' status reports concerning the
bankruptcy case. In one joint status report, Plaintiffs
emphasized the significant overlap between the bankruptcy
case and this action because the Plan "includes a 'class' . . .
of shareholder claims against PG&E that is, for all practical
purposes, a large subset of the putative class before th[e]
[district court]." Plaintiffs further acknowledged:

> [P]roceedings involving the merits of the
> securities claims in bankruptcy court . . . will
> necessarily involve addressing identical
> issues [the district court] may be called on to
> consider, including whether the 19 asserted
> false and misleading statements made over
> three-and-a-half    years    are    actionable

---

[5] Certain named Plaintiffs in this action, but not PERA, allege that they
"are [entirely] excluded" from the bankruptcy securities-claims ADR.
However, it appears undisputed that many (or all) of the securities
claimants participating in the securities-claims ADR are also members
of the putative class in this action.

> (including the elements of falsity, materiality, and scienter), as well as whether and to what extent these statements caused investor losses over the nine asserted loss causation events.

Thus, Plaintiffs predicted that the bankruptcy court's adjudication of securities claims "may be conducted in parallel with [this action in the district court], including to judgment and, potentially, to inconsistent judgments on identical issues." In another status report, Plaintiffs reiterated that "at some point, the bankruptcy court will face the merits of the claims against PG&E that are also at issue in the securities action before [the district court]."

Apparently relying on Plaintiffs' representations that the two proceedings "will necessarily involve addressing identical issues," the district court issued the Notice indicating its "inten[t] to stay this case pending completion of the claims procedure and ADR." The district court reasoned that a stay "will promote judicial efficiency and economy, as well as avoid the potential for inconsistent judgments," in part because "the ongoing bankruptcy [securities] claim process will affect, among other things, the size and potential damage claims of the putative classes in this action." The district court acknowledged that resolution of the Individual Defendants' motions to dismiss would be delayed but determined that "the potential prejudice a delay will cause to any of the parties" was outweighed by the district court's "stated justifications."

Plaintiffs objected to the district court's Notice, vigorously contending that staying the action would not further judicial efficiency and that they and the putative class would be prejudiced by the delay. Regarding judicial efficiency, Plaintiffs argued that having the bankruptcy court

address the merits of the securities claims in the first instance "cannot possibly avoid the potential for inconsistent judgments" because the bankruptcy court's decisions are appealable to the district court, thereby eventually requiring the district court to decide the full set of issues for itself. The only efficient course, Plaintiffs reasoned, was for the district court to decide the merits issues first. Additionally, Plaintiffs argued that, because the Individual Defendants' proportionate responsibility for any damages owed to the putative class for securities violations must be determined by a jury, the district court was incorrect that the bankruptcy case addressing PG&E's responsibility would affect the "size and potential damage claims . . . in this action."

Regarding prejudice, Plaintiffs submitted reports of multiple experts who estimated that the bankruptcy court's securities-claim ADR will likely take between four and seven years to complete. Plaintiffs argued that this delay significantly increased "the likelihood of lost evidence and fading memories," thereby prejudicing their ability to collect evidence for their action. Plaintiffs also contended that a stay would increase PG&E's bargaining power and unfairly inflate the importance of the securities-claim ADR because putative class members who did or could not submit claims were excluded from participating in the ADR.

The Individual Defendants did not object to a stay or identify any harm they would suffer if this action were not stayed.

### D. The District Court's Stay Order

Over a year-and-a-half after issuing the Notice, the district court entered a stay on the last day of September 2022 in a summary order (Order) that differed from the Notice in several ways. First, the Order recited only

"efficiency" and an "overlap between the bankruptcy proceedings and the instant securities fraud action" as justifications for the stay, without any analysis. The Order did not include the Notice's additional justifications of "the potential for inconsistent judgments" or the impact on "the size and potential damage claims of the putative classes in this action." And second, the Order delineated that the stay would last until "resolution of the bankruptcy proceedings" instead of until "completion of the [securities-claims ADR]," as the Notice had previously indicated. Plaintiffs timely appealed from the Order.[6]

## II. STANDARD OF REVIEW

"We review a district court's stay order for abuse of discretion. However, the standard is 'somewhat less deferential' than the abuse of discretion standard used in other contexts." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citations omitted). Regarding stays, "[a] district court abuses its discretion if it 'base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Id.* (second alteration in original) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). It is more likely that a district court has abused its discretion when the party seeking relief from the stay establishes the stay "will result in irreparable injury and a

---

[6] Contrary to the opening brief's representation that the notice of appeal was filed on October 28, 2022, the notice of appeal was dated and filed on October 31, 2022. The appeal was nevertheless timely because October 30, the end of the statutory period, *see* 28 U.S.C. § 2107(a), fell on a Sunday, *see* Fed. R. App. P. 26(a)(1)(C) ("[I]f the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

miscarriage of justice." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

## III. DISCUSSION

### A. Appellate Jurisdiction

We first consider whether we have jurisdiction over this interlocutory appeal. "Ordinarily, a stay order is not an appealable final decision." *Davis v. Walker*, 745 F.3d 1303, 1308 (9th Cir. 2014). The Supreme Court has recognized, however, that a stay order is appealable as a final decision under 28 U.S.C. § 1291 if the order places the plaintiff "effectively out of court." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 9 (1983) (quoting *Idlewild Liquor Corp. v. Epstein*, 370 U.S. 713, 715 n.2 (1962)). *Moses H. Cone* concerned a stay of a federal action pending resolution of a state action that would have preclusive effect, thereby placing the litigant "effectively out of [federal] court." *Id.* at 10 (internal quotation marks omitted). But the reasoning of *Moses H. Cone* applies even "absent risk that another proceeding will have res judicata effect" where "an indefinite delay amounts to a refusal to proceed to a disposition on the merits." *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 723–24 (9th Cir. 2007). And while lengthy *or* indefinite stays may fall within *Moses H. Cone*'s ambit, *see id.* at 723, we comfortably assert jurisdiction over appeals from orders imposing stays that are both lengthy *and* indefinite, *see Davis*, 745 F.3d at 1309.

The stay entered in this case is indefinite because its end date is triggered by the occurrence of an external event that is not time limited. *See id.*; *see also Dependable Highway*, 498 F.3d at 1066–67 (observing that "stays of short, or at least reasonable, duration" are favored). *But see Blue Cross*,

490 F.3d at 724 (stating that lengthy or indefinite stays are not "invariably improper or inappropriate"). Although the stay could be lifted at some point in the future, the simple fact that "litigation may eventually resume" does not deprive us of appellate jurisdiction. *Id.* at 724; *see Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1102 (9th Cir. 2005) ("[A]bsolute certainty is not required in order to put a party 'effectively out of court' within the meaning of the *Moses H. Cone* doctrine.").

The stay entered here is also likely to be extremely lengthy. The stay has already been in place for over 18 months, the benchmark we first recognized in *Blue Cross*. 490 F.3d at 724. We agree with the Individual Defendants that *Blue Cross* did not establish a categorical rule that any stay lasting longer than 18 months places litigants effectively out of court. Nor do we establish such a rule here. There may be circumstances in which a stay of this duration does not prevent litigants from accessing court.[7] But 18 months is nonetheless a guidepost for our analysis, and the circumstances here fall within *Moses H. Cone*'s reasoning.

Moreover, given the size and complexity of PG&E's bankruptcy proceeding, we are persuaded that the stay is likely to continue for a significant period. Plaintiffs' expert opined that the securities-claims ADR process alone could

---

[7] Our prior cases endorse a clear rule that the district court abuses its discretion by issuing a stay order that places a plaintiff out of court, regardless of the type of court presiding over the related proceeding. *See Leyva v. Cert. Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) ("This rule [governing the district court's stay authority] applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."); *id.* at 864 (collecting cases).

take approximately seven years to complete, a calculation that the Individual Defendants do not contest. And as explained, the stay the district court entered does not terminate until "resolution of the bankruptcy proceedings," which could be much longer than seven years.

Finally, to the extent there is any ambiguity regarding whether the district court intended to end the stay at the conclusion of the securities-claim ADR process or at the conclusion of the bankruptcy proceedings as a whole, the difference is immaterial. Measured against either end point, the stay is of such a duration as to trigger jurisdiction under *Moses H. Cone* and *Blue Cross*. Accordingly, we conclude that we have jurisdiction over this interlocutory appeal.**8**

## B. The Stay Order

We next turn to whether the district court abused its discretion by staying this case pending resolution of PG&E's bankruptcy proceedings. The district court possesses "inherent authority to stay federal proceedings pursuant to its docket management powers." *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 842 (9th Cir. 2023). A district court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an

---

8 In cases invoking *Moses H. Cone*, we have previously also analyzed the existence of jurisdiction under the related doctrine set forth in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). *See, e.g.*, *Lockyer*, 398 F.3d at 1103–04; *see also Dependable Highway*, 498 F.3d at 1065 ("To fall within *Cohen*'s ambit, an order 'must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.'" (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978))). We decline to conduct this additional analysis here because this appeal clearly falls within *Moses H. Cone*.

action before it, pending resolution of independent proceedings which bear upon the case." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (citation omitted). The decision to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).

Our prior cases have "identified three non-exclusive factors courts must weigh when deciding whether to issue a docket management stay: (1) 'the possible damage which may result from the granting of a stay'; (2) 'the hardship or inequity which a party may suffer in being required to go forward'; and (3) 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law.'" *Ernest Bock*, 76 F.4th at 842 (quoting *Lockyer*, 398 F.3d at 1110).[9] A district court's concern for the last factor, which courts refer to as "judicial efficiency," "standing alone is not necessarily a sufficient ground to stay proceedings." *Dependable Highway*, 489 F.3d at 1066. We begin our analysis there.

### 1. Judicial Efficiency

The district court gave a single justification for its stay order: judicial efficiency. Because of "the overlap between

---

[9] In *Blue Cross*, we referenced a five-factor balancing test set forth in *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995). 490 F.3d at 724. *Keating*'s five-factor test is materially similar to the test originally described in *CMAX*—both consider judicial efficiency and prejudice to the parties and others—but the *Keating* test has been applied when a district court is considering staying "civil proceedings in the face of a parallel criminal proceeding," as was the case in *Blue Cross*. *Keating*, 45 F.3d at 324. Because there are no parallel criminal proceedings here, we apply the balancing test set forth in *CMAX*. *See Lockyer*, 398 F.3d at 1112 (applying the *CMAX* test).

the bankruptcy proceedings and the instant securities fraud action," the district court concluded that "[a] stay of the entire action 'is in the interest of efficiency' and would avoid proceeding on a piecemeal basis." The parties dispute whether the stay here achieves any efficiency.

A district court may stay a case "pending resolution of independent proceedings which bear upon the case," and we have clarified "that the issues in such [independent] proceedings" do not need to be "necessarily controlling of the action before the [district] court." *Leyva*, 593 F.2d at 863–64. Indeed, we have repeatedly held that a district court does not abuse its discretion by staying litigation for efficiency reasons pending resolution of other related proceedings. *See, e.g.*, *Lockyer*, 398 F.3d at 1110–12 (discussing cases upholding stays). For example, in *CMAX*, a mandamus proceeding challenging a stay order, we upheld a stay pending resolution of related administrative proceedings because "at the very least, the [administrative] proceeding [would] provide a means of developing comprehensive evidence bearing upon the highly technical . . . questions which [were] likely to arise in the district court case." 300 F.2d at 269. And in *Mediterranean Enterprises*, we sustained the district court's stay of an entire federal action pending resolution of arbitration proceedings, even though only some of the plaintiff's claims were subject to arbitration, because both the federal action and arbitration involved identical questions. 708 F.2d at 1465.

Plaintiffs argue that any efficiency achieved by the stay entered here is illusory because any decision the bankruptcy court makes about PG&E's liability for federal securities violations is appealable to—and not binding on—the district court. Plaintiffs further contend that "the [s]tay does not avoid piecemeal litigation because the separate claims

against [the Individual] Defendants . . . will still, eventually, need to proceed to discovery and then judgment in the District Court." We are not persuaded. As the Individual Defendants argue, the efficiency to be gained by the stay is not illusory simply because the bankruptcy court's decision will not bind the district court or because the district court will still have to adjudicate the claims. *See Leyva*, 593 F.2d at 863–64; *CMAX*, 300 F.2d at 269.

Put simply, because the bankruptcy court must address issues identical to those presented in this action in resolving the securities claims asserted against PG&E in the bankruptcy action, the district court could receive "considerable assistance in resolving" this action from the bankruptcy court's development of the record and assessment of common issues. *Lockyer*, 398 F.3d at 1110. Indeed, Plaintiffs acknowledge as much: They represented that PG&E is likely to "seek and provide discovery, engage experts, and conduct evidentiary hearings" in litigating the securities claims pending in the bankruptcy court, including in relation to the complex element of loss causation. Plaintiffs' own statements thus highlight how the bankruptcy court's adjudication of "identical" securities claims could "at the very least, . . . provide a means of developing comprehensive evidence bearing upon the highly technical [securities] questions which are likely to arise in the district court case." *CMAX*, 300 F.2d at 269; *see also Leyva*, 593 F.2d at 863 ("[F]indings, as well as the documents and testimony produced during the arbitration hearing, may be of valuable assistance to the court in resolving the [statutory] claims presented in . . . the complaint, even under the assumption that the court is not bound and controlled by the arbitrator's conclusions.").

Accordingly, we hold that the district court did not abuse its discretion in determining that the bankruptcy court's initial determination of identical factual and legal issues could promote efficient adjudication of the claims presented in this action.[10] *See Lockyer*, 398 F.3d at 1113 (holding that the district court's stay was improper where, among other considerations, "the proceeding in the bankruptcy court [was] unlikely to decide, or contribute to the decision of, the factual and legal issues before the district court").

## 2. Prejudice

Even if there are efficiencies to be gained by a stay, the district court must also weigh the relative hardships that a stay might cause. *See Landis*, 299 U.S. at 254–55; *CMAX*, 300 F.2d at 268. In *Landis*, the Supreme Court made clear that "if there is even a fair possibility that the stay . . . will work damage to some one else," the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." 299 U.S. at 255. Here, no party sought a stay, and the district court did not adequately weigh these interests.

To begin, the Individual Defendants do not articulate any prejudice that they will suffer from having to continue litigating this case. *See Lockyer*, 398 F.3d at 1112 ("[B]eing

---

[10] The district court's Notice included two more efficiency-based justifications—the "potential for inconsistent judgments" and that "the ongoing bankruptcy claim process will affect, among other things, the size and potential damage claims of the putative classes in this action." Because we conclude that the invocation of judicial efficiency in the district court's Order was a proper justification for a stay and adequately supported by the record, we need not address the additional questions of whether we may look to the Notice's justifications and, if so, whether these justifications support a stay.

required to defend a suit, without more, does not constitute [prejudice]."). Therefore, there are no relative hardships to balance. The question is whether the stay imposes hardship on Plaintiffs that outweighs the efficiencies to be gained by the stay. Both below and on appeal, Plaintiffs raised several arguments for why they will be prejudiced by a stay, including: (1) danger of lost evidence; (2) competition with claimants in other actions for limited insurance covering damages awards; and (3) inability for class members who did not (or were unable to) submit claims in the bankruptcy proceedings to "pursue a remedy in any court, for an unknown length of time." The district court's Notice tersely acknowledged that a stay could cause prejudicial delay, but its Order was silent as to Plaintiffs' specific arguments raised in their objections.

The Order's failure to address Plaintiffs' prejudice arguments is particularly problematic because the length of the stay ordered exceeds what the district court initially indicated in the Notice.**[11]** While a district court has discretion to grant a lengthy stay, it must "weigh[] the proper factors" in doing so. *Blue Cross*, 490 F.3d at 724. "We cannot review the district court's exercise of its discretion in weighing these factors unless we know that it has done so and why it reached its result." *Id.* Here, the district court's Order gives no indication that Plaintiffs' specific objections were considered or why the efficiencies the district court seeks to gain outweigh the potential prejudice caused by the

---

[11] Despite the plain terms of the Order stating that the stay remains in place until "resolution of the bankruptcy proceedings," the Individual Defendants contend that the stay lasts only until completion of the securities-claims ADR, as contemplated in the district court's Notice. The Individual Defendants offer no authority establishing that the district court's Notice controls over the express terms of the Order.

significant delay. Because we generally "decline to indulge in speculation in an effort to make plain that which is not discernible in the record," *Barba-Reyes v. United States*, 397 F.2d 91, 93 (9th Cir. 1967), we must end our analysis here. The district court, more familiar with the complexities presented in this action and the extent of this action's overlap with the bankruptcy action, is in the better position to assess and weigh Plaintiffs' objections to the stay in the first instance. If, after considering the potential prejudice to Plaintiffs, the district court determines that a stay is nonetheless appropriate, it should state its findings and explain why a stay promotes "a just and efficient determination of th[is] case." *Leyva*, 593 F.2d at 864.

For these reasons, we vacate the stay and remand for the district court to weigh all the relevant interests in determining whether a stay of this action is appropriate. *See CMAX*, 300 F.2d at 268.

**VACATED and REMANDED.[12]**

---

[12] Plaintiffs' motion for judicial notice [Dkt. 46] is granted.