**LABATON KELLER SUCHAROW LLP**
THOMAS A. DUBBS (*pro hac vice*)
MICHAEL P. CANTY (*pro hac vice*)
THOMAS G. HOFFMAN, JR. (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: tdubbs@labaton.com
mcanty@labaton.com
thoffman@labaton.com

*Counsel for Lead Plaintiff the Public Employees Retirement Association of New Mexico and Lead Counsel for the Class*

**ADAMSKI, MORISKI, MADDEN, CUMBERLAND & GREEN LLP**
JAMES M. WAGSTAFFE (#95535)
6633 Bay Laurel Place
Avila Beach, CA 93424
Telephone: (805) 543-0990
Facsimile: (805) 543-0980
Email: wagstaffe@ammcglaw.com

*Liaison Counsel for Lead Plaintiff the Public Employees Retirement Association of New Mexico and the Class*

*[Additional counsel appear on signature page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IN RE PG&E CORPORATION SECURITIES LITIGATION

Civil Action No. 5:18-cv-03509-EJD

**LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**Date**: August 25, 2026
**Time**: 9:00 a.m.
**Judge**: Hon. Edward J. Davila
**Courtroom**: 4, 5th Floor

# TABLE OF CONTENTS

Page


Table of Authorities ..... ii

NOTICE OF MOTION ..... 1

STATEMENT OF ISSUES TO BE DECIDED ..... 2

MEMORANDUM OF POINTS AND AUTHORITIES ..... 2

PRELIMINARY STATEMENT ..... 2

ARGUMENT ..... 5

I. LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 21% OF THE COMMON FUND SHOULD BE APPROVED ..... 5

A. Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund ..... 5

B. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases ..... 6

C. The Requested Attorneys' Fees Are Very Reasonable ..... 7

D. Analysis Under the *Vizcaino* Factors Justifies the Requested Fee ..... 8

1. The Very Favorable Result Achieved ..... 9

2. The Risks of Litigation ..... 11

3. The Skill Required and the Quality of Work ..... 15

4. The Contingent Nature of the Fee and the Financial Burden ..... 16

5. Reaction of the Settlement Class to Date ..... 19

E. A Lodestar Cross-check Confirms that the Requested Fee Would Be Very Reasonable ..... 19

II. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ..... 22

III. lead plaintiff's PSLRA REQUEST FOR REIMBURSEMENT ..... 25

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Allergan, Inc. Proxy Violation Derivatives Litig.*,
2018 WL 4959014 (C.D. Cal. Aug. 13, 2018) .......... 8

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .......... 19, 22, 25

*In re Amkor Tech. Inc. Sec. Litig.*,
2009 WL 10708030 (D. Ariz. Nov. 19, 2009) .......... 6

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) .......... 18

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 (D. Ariz. Apr. 20, 2012) .......... 8

*In re Apple Inc. Device Performance Litig.*,
2021 WL 1022866 (N.D. Cal. Mar. 17, 2021), *vacated and remanded on other grounds*, 50 F.4th 769 (9th Cir. 2022) .......... 6

*In re Apple Inc. Device Performance Litig.*,
2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) .......... 6, 16, 20

*Baird v. BlackRock Inst. Tr. Co. N.A.*,
2021 WL 5113030 (N.D. Cal. Nov. 3, 2021) .......... 7

*In re BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) .......... 17

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .......... 14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) .......... 5, 17

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .......... 10, 22

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......... 7

*Blum v. Stenson*,
465 U.S. 886 (1984) .......... 6

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......... 5

*In re Capacitors Antitrust Litig.*,
2017 WL 9613950 (N.D. Cal. June 27, 2017) .......... 6

*Destefano v. Zynga Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .......... 7, 15, 17

*Fleming v. Impax Lab'ys Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) .......... 5

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x. 452 (9th Cir. 2009) .......... 7

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) .......... 17, 18

*Goldman Sachs Grp, Inc. v. Ark. Tchr Ret. Sys.*,
594 U.S. 113 (2021) .......... 14, 15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 9

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) .......... 23

*Hayden v. Portola Pharms. Inc.*,
2023 WL 2375242 (N.D. Cal. Mar. 6, 2023) .......... 22

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom, Hefler v. Pekoc*, 802 F. App'x. 285 (9th Cir. 2020) .......... 9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......... 9

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005) .......... 15, 16, 19

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) .......... 12

*Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .......... 11, 16

*Missouri v. Jenkins*,
491 U.S. 274 (1989) .......... 20

*Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) .......... 6, 7

*In re Nuvelo, Inc. Sec. Litig.*,
2011 WL 2650592 (N.D. Cal. July 6, 2011) .......... 9

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......... 6, 8, 11, 16

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .......... 8, 9

*In re Oracle Corp. Sec. Litig.*,
No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) .......... 17

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .......... 11

*Pardi v. Tricida, Inc.*,
2025 WL 2988737 (N.D. Cal. Oct. 23, 2025) .......... 20, 22

*Plumbers & Pipefitters Loc. Union 295 Pension Fund v. CareDx, Inc.*,
2025 WL 3546227 (N.D. Cal. Dec. 4, 2025) .......... 9, 16, 19

*Redwen v. Sino Clean Energy, Inc.*,
2013 WL 12303367 (C.D. Cal. July 9, 2013) .......... 11

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) .......... 18

*In re Robinhood Outage Litig.*,
2023 WL 5321525 (N.D. Cal. July 28, 2023) .......... 6

*Rutti v. Lojack Corp. Inc.*,
2012 WL 3151077 (C.D. Cal. July 31, 2012) .......... 20

*In re Snap Inc. Sec. Litig.*,
2021 WL 667590 (C.D. Cal. Feb 18, 2021) .......... 10

*Taylor v. Populus Grp., LLC*,
2023 WL 139898 (S.D. Cal. Jan. 9, 2023) .......... 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......... 5, 17

*Thant v. Rain Oncology Inc.*,
2026 WL 1113721 (N.D. Cal. Apr. 24, 2026) .......... 7, 20

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977) .......... 5

*Vincent v. Reser*,
2013 WL 621865 (N.D. Cal. Feb. 19, 2013) .......... 5, 23

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods Liab. Litig.*,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) .......... 19

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994) .......... 5, 8

*In re Xcel Energy, Inc. Securities, Derivative & "ERISA" Litigation*,
364 F. Supp. 2d 980 (D. Minn. 2005) .......... 18

**Docketed Cases**

*In re Alphabet Inc. Sec. Litig.*,
No. 18-cv-06245, slip op. (N.D. Cal. Sept. 30, 2024) ........ 22

*Boston Ret. Sys. v. Uber Techs., Inc.*,
No. 3:19-cv-06361-RS, slip op. (N.D. Cal. Dec. 4, 2024)........ 8

*In re Intuitive Surgical Sec. Litig.*,
No. 5:13-cv-01920-EJD, slip op. (N.D. Cal. Dec. 20, 2018)........ 25

*Lamartina v. VMware, Inc.*,
No. 5:20-02182-EJD, slip op (N.D. Cal. Mar. 31, 2025)........ 7, 22

*Purple Mountain Tr. v. Wells Fargo Co.*,
No. 3:18-cv-03948-JD, slip op. (N.D. Cal. Sept. 26, 2023) ........ 8

*Ramirez v. Exxon Mobil Corp.*,
No. 3:16-cv-03111, ECF No. 390 (N.D. Tex. May 14, 2026)........ 18

*In re Vaxart, Inc. Sec. Litig.*,
No. 20-cv-05949-VC, ECF No. 717 (N.D. Cal. Apr. 28, 2026)........ 18

**Statutes**

15 U.S.C. § 78u-4(a)(6) ........ 7

15 U.S.C. §78u-4(a)(4) ........ 1, 2, 25

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on August 25, 2026, at 9:00 a.m., in Courtroom 4, 5th Floor of the Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila of the United States District Court, Northern District of California, Lead Plaintiff Public Employees Retirement Association of New Mexico ("Lead Plaintiff" or "PERA"), on behalf of itself and named plaintiff York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Defined Benefit Plan of the Mid-Jersey Trucking Industry and Teamsters Local 701 Pension and Annuity Fund (collectively, "Securities Act Plaintiffs," and with Lead Plaintiff, "Plaintiffs"), will respectfully move the Court for entry of an order, pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure: (i) awarding attorneys' fees in the amount of 21% of the Settlement Fund; (ii) awarding Litigation Expenses in the amount of $4,432,711.53, plus accrued interest; and (iii) approving Lead Plaintiff's request for costs and expenses (including lost wages) related to its efforts on behalf of the Settlement Class, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(4).[1]

The Motion is supported by the following Memorandum of Points and Authorities, and the accompanying Declaration of Thomas G. Hoffman, Jr. in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses, dated June 19, 2026 ("Hoffman Declaration" or "Hoffman Decl."), with annexed exhibits.[2]

---

[1] The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement, dated December 31, 2025 (the "Settlement Agreement" or "Stipulation," ECF No. 332-2). Capitalized terms used herein are defined in the Stipulation and have the same meanings as set forth therein. Unless otherwise noted, citations and internal quotations have been omitted.

[2] All exhibits referenced herein are annexed to the Hoffman Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. __ -__." The first numerical reference is to the designation of the entire exhibit attached to the Declaration and the

*Footnote continued on next page…*

Pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement (ECF No. 347), any objections to this Fee and Expense Application must be filed with the Court no later than July 6, 2026. A proposed order will be submitted with Lead Counsel's reply submission on or before August 11, 2026, after the deadline for objecting has passed.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the Court should approve Lead Counsel's request, on behalf of Plaintiffs' Counsel, for an award of attorneys' fees in the amount of 21% of the Settlement Fund, which includes accrued interest.

2. Whether the Court should approve Lead Counsel's request for payment of litigation expenses incurred by certain of Plaintiffs' Counsel, in the amount of $4,432,711.53, plus accrued interest.

3. Whether the Court should award Lead Plaintiff $22,970, pursuant to §78u-4(a)(4), for reimbursement of its reasonable costs and expenses (including lost wages) related to its representation of the Settlement Class.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

After nearly eight years of hard-fought litigation, working on a fully contingent basis, and with no guarantee of ever being paid, Court-appointed Lead Counsel, with the assistance of Plaintiffs' Counsel,[3] secured a very favorable, all cash, $100,000,000 Settlement in litigation against issuers that filed for Chapter 11 bankruptcy protection, and others. This recovery represents a very favorable result for the Settlement Class as it provides substantial, near-term compensation to Settlement Class Members, while avoiding the substantial challenges associated

---

second reference is to the exhibit designation within the exhibit itself.

[3] "Plaintiffs' Counsel" refers collectively to Labaton Keller Sucharow LLP; Robbins Geller Rudman & Dowd LLP; Adamski, Moriski, Madden, Cumberland & Green LLP; Vanoverbeke, Michaud & Timmony, P.C.; Lowenstein Sandler LLP; Michelson Law Group; and Law Offices of Miriam Hiser.

with, *inter alia*, pursuing the Class Action through motions to dismiss and class certification, and both the Class Action and claims in the Chapter 11 Cases through summary judgment, trial, and the inevitable appeals that would follow.

In litigating the Class Action and the Chapter 11 Cases, Plaintiffs' Counsel worked tirelessly on behalf of the Settlement Class and expended extensive time (approximately 60,934.85 hours in professional time) and resources to ensure the best possible recovery for Settlement Class Members. As detailed in the Declaration of Thomas G. Hoffman, Jr. in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses, dated June 19, 2026 ("Hoffman Declaration" or "Hoffman Decl."),[4] filed herewith, Plaintiffs' Counsel, among other things: (i) conducted an extensive years-long investigation of the claims and defenses at issue; (ii) prepared and filed four separate amended complaints, which expanded the scope of the initial complaint by adding detailed allegations in support of Plaintiffs' claims; (iii) opposed the District Court Defendants' extensive motions to dismiss the Third Amended Complaint through two rounds of briefing; (iv) vigorously represented and advocated on behalf of the Settlement Class with respect to the unusually complex Chapter 11 Cases, including efforts to extend the claims bar date, to protect claimants' procedural rights, to seek certification of a proposed class, object to confirmation of PG&E's plan of reorganization, two appeals to the Ninth Circuit Court of Appeals, certifying a class, and opposing the Reorganized Debtors' securities claims omnibus objections, including their sufficiency objection; (v) propounded discovery requests on the Reorganized Debtors, and others, and responded to their discovery requests,

---

[4] The Hoffman Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Class Action and the Chapter 11 Cases; the nature of the claims asserted; the litigation efforts; negotiations leading to the Settlement; and the risks and uncertainties of continued litigation, among other things. Citations to "¶" and " ¶¶ __" in this memorandum refer to paragraphs in the Hoffman Declaration, unless otherwise noted.

including defending four depositions of Plaintiffs; (vi) reviewed tens of thousands of documents provided by the Reorganized Debtors and others; (vii) consulted with experts in the fields of ethics, damages, loss causation and market efficiency; and (viii) engaged in vigorous and lengthy mediated settlement discussions over the span of several years and with multiple mediators. Additionally, the efforts and views of counsel for the Securities Act Plaintiffs, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), are provided in the Declaration of Willow E. Radcliffe in Support of Final Approval of Class Action Settlement and an Award of Attorneys' Fees and Expenses ("Radcliffe Dec."), Exhibit 5, filed herewith.

For these efforts, Lead Counsel, on behalf of Plaintiffs' Counsel, respectfully requests an award of attorneys' fees of 21% of the Settlement Fund, which includes accrued interest; Litigation Expenses in the amount of $4,432,711.53, plus accrued interest; and reimbursement in the amount of $22,970 to Lead Plaintiff, pursuant to the PSLRA, for its extensive efforts on behalf of the Settlement Class.[5]

As discussed herein, as well as in the Hoffman Declaration, it is respectfully submitted that the requested fee is eminently fair and reasonable, particularly given the recovery obtained, the considerable litigation efforts undertaken by Plaintiffs' Counsel here, and the risks and challenges presented by the complex issues in this litigation. The negative, fractional lodestar multiplier of approximately 0.46 (or 46% of Plaintiffs' Counsel's time) confirms that the fee would not be disproportionate to their work on behalf of the Settlement Class. Moreover, the requested fee and expenses have been approved by Lead Plaintiff PERA and each of the Securities Act Plaintiffs. *See* Ex. 1 at ¶¶8-10; Ex. 2 at ¶¶2, 5-6; Ex. 3 at ¶¶2, 5-6; and Ex. 4 at ¶¶2, 5-6. Furthermore, the expenses requested are reasonable in amount and were necessarily incurred for the successful litigation of this long-running and complex matter.

Accordingly, it is respectfully submitted that the requested fees, Litigation Expenses, and

[5] Lead Counsel is not seeking fees or expenses that were previously reimbursed from the Debtors' estate in connection with PERA's August 2020 Substantial Contribution Motion for fees and expenses filed in the Chapter 11 Cases.

PSLRA request should be awarded in full.

## ARGUMENT

### I. LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 21% OF THE COMMON FUND SHOULD BE APPROVED

#### A. Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund

It is well settled that attorneys who represent a class and achieve a benefit for class members are entitled to a reasonable fee as compensation for their services. The Supreme Court has recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Vincent v. Reser*, 2013 WL 621865, at *4 (N.D. Cal. Feb. 19, 2013) (quoting *Boeing*, 444 U.S. at 478). The Ninth Circuit similarly holds that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this rule, known as the "common fund doctrine," is to prevent unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS*), 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *7 (N.D. Cal. July 15, 2022) ("The purpose of the 'common fund' doctrine is to avoid unjust enrichment by requiring 'those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it.'").

The Supreme Court has also emphasized that private securities actions, like this, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the U.S. Securities and Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide '"a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action"').

### B. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

The Supreme Court has also recognized that under the common fund doctrine, a reasonable fee may be based "on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Although courts have discretion to employ either the percentage of recovery or lodestar method, "[t]he use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Robinhood Outage Litig.*, 2023 WL 5321525, at *1 (N.D. Cal. July 28, 2023); *see also In re Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *12 (N.D. Cal. Feb. 17, 2023) ("[T]he use of the percentage-of-the fund method in common fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel."); *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *2 (N.D. Cal. June 27, 2017) ("The percentage-of-the-fund method is preferred when counsel's efforts have created a common fund for the benefit of the class."); *In re Amkor Tech. Inc. Sec. Litig.*, 2009 WL 10708030, at *1 (D. Ariz. Nov. 19, 2009) (percentage-of-recovery method most appropriate to award attorneys' fees in securities class actions); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("use of the percentage method in common fund cases appears to be dominant").

Indeed, the percentage-of-recovery method for awarding attorneys' fees is preferable in cases with a common-fund recovery as it "aligns the lawyers' interests with achieving the highest award for class members, and reducing the burden on the courts that a complex lodestar calculation requires." *In re Apple Inc. Device Performance Litig*., 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021)(Davila, J.), *vacated and remanded on other grounds*, 50 F.4th 769 (9th Cir. 2022); *see also Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving

the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires.”).

Further, the percentage of the fund method is appropriate in common fund cases where “the benefit to the class is easily quantified.” *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see also Destefano v. Zynga Inc.,* 2016 WL 537946, at *16 (N.D. Cal. Feb. 11, 2016) (“Because this case involves a common settlement fund with an easily quantifiable benefit to the Class, the Court will primarily determine attorneys’ fees using the percentage method . . . .”); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App’x. 452, 456-57 (9th Cir. 2009) (overruling objection based on use of percentage-of-the-fund approach); *Baird v. BlackRock Inst. Tr. Co. N.A.*, 2021 WL 5113030, at *6-7 (N.D. Cal. Nov. 3, 2021) (applying percentage of the fund method and lodestar crosscheck).

The use of the percentage-of-recovery method also comports with the language of the PSLRA, which states that “[t]otal attorneys’ fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.” 15 U.S.C. § 78u-4(a)(6); *see also Nguyen*, 2014 WL 1802293, at *9 (“[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney’s fees are reasonable.”).

### C. The Requested Attorneys’ Fees Are Very Reasonable

“Under the percentage-of-recovery method, courts in the Ninth Circuit typically calculate 25% of the fund as the ‘benchmark’ for a reasonable fee award, providing adequate explanation in the record of any ‘special circumstances’ justifying a departure.” *Thant v. Rain Oncology Inc.*, 2026 WL 1113721, at *6 (N.D. Cal. Apr. 24, 2026) (Davila, J.) (citing *Bluetooth*, 654 F.3d at 942). Here, Lead Counsel requests less than the 25% benchmark as compensation. A review of fee awards in securities and other complex common fund cases within the Ninth Circuit shows that an award of 21% here would be very reasonable and less than awards in similarly sized (and even larger) settlements. *See, e.g.*, *Lamartina v. VMware, Inc.*, No. 5:20-02182-EJD, slip op. at

1-2 (N.D. Cal. Mar. 31, 2025) (awarding 25% of $102,500,000 settlement) (Ex. 11)[6]; *Boston Ret. Sys. v. Uber Techs., Inc.*, No. 3:19-cv-06361-RS, slip op. at 3-5 (N.D. Cal. Dec. 4, 2024) (awarding 29% of $200 million settlement) (Ex. 11); *Purple Mountain Tr. v. Wells Fargo Co.*, No. 3:18-cv-03948-JD, slip op. at 6-8 (N.D. Cal. Sept. 26, 2023) (awarding 25% of $300 million settlement) (Ex. 11); *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *9 (D. Ariz. Apr. 20, 2012) (awarding 33.33% of $145 million settlement); *see also In re Allergan, Inc. Proxy Violation Derivatives Litig.*, 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018) ("The Ninth Circuit uses a 25% benchmark in common fund class actions, and 'in most common fund cases, the award exceeds that benchmark,' with a 30% award the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage.'"); *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds that benchmark."). Moreover, according to NERA Economic consulting, the median fee in securities class action settlements ranging from $100 million to $500 million is 25%. *See* Edward Flores, Svetlana Starykh & Ivelina Velikova, *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review* (NERA Economic Research. Assoc. Jan. 2026), Ex. 6 at 31.

As discussed below, the various factors to be considered by the Court, including the result achieved, the difficulty and complexity of the claims, and the obstacles and challenges faced by Plaintiffs' Counsel, which exceeded those in typical cases in most respects, support the reasonableness of the requested 21% fee award in this case.

### D. Analysis Under the *Vizcaino* Factors Justifies the Requested Fee

The guiding principle in the Ninth Circuit is that a fee award must be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296; *Omnivision*, 559 F. Supp. 2d at 1047.

In assessing attorneys' fees under the percentage method, the Court can consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of the work; (4) awards made in similar cases; and (5) the contingent nature of the fee and financial burden carried by counsel. *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Online*

[6] All unreported "slip" opinions are filed herewith as Exhibit 11 to the Hoffman Declaration.

*DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) ("When using the percentage-of-recovery method, courts consider a number of factors, including whether class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (*e.g.*, cost, duration, foregoing other work), and whether the case was handled on a contingency basis.").

The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *see also Vizcaino*, 290 F.3d at 1048 (district courts must ensure that fee awards are "supported by findings that take into account all of the circumstances of the case").

**1. The Very Favorable Result Achieved**

Courts have consistently recognized that the result achieved is a key factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the most critical factor is the degree of success obtained"); *Plumbers & Pipefitters Loc. Union 295 Pension Fund v. CareDx, Inc.*, 2025 WL 3546227, at *12 (N.D. Cal. Dec. 4, 2025) ("the first and most critical factor in assessing an attorneys' fee request is 'the degree of success obtained'"); *see also Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom, Hefler v. Pekoc*, 802 F. App'x. 285 (9th Cir. 2020); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) ("[T]he Court finds that counsel obtained quality results. This factor supports an upward adjustment of the benchmark.").

Lead Counsel respectfully submits that the $100 million proposed Settlement is a very favorable result for the Settlement Class, both quantitatively and when considering the risk of a lesser (or no) recovery if the claims proceeded through the motions to dismiss, class certification, summary judgment, trial, and appellate challenges. For example, the Settlement is nearly six times greater than the $17.3 million median recovery, and more than twice the $40 million average settlement value, for securities class actions in 2025. *See* Ex. 6 at 22-24 (NERA Report).

Additionally, as discussed in the Hoffman Declaration and Lead Plaintiff's Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation and Memorandum of Points and Authorities in Support Thereof ("Settlement Mem."), according to analyses prepared by Lead Plaintiff's consulting damages expert, the maximum aggregate damages the Settlement Class could have obtained at trial—if liability were established with respect to the loss causation events that survived this Court's September 30, 2025 order on the District Court Defendants' motions to dismiss the Third Amended Complaint (the "MTD Order"), *see PG&E Corp.*, 806 F. Supp. 3d 962, 1000-01 (N.D. Cal. 2025), *i.e.*, the May 25, 2018 and June 11, 2018 disclosures—were approximately $1 billion, without netting of pre-Class Period gains. ¶¶105-107. However, under a more conservative approach using the date of the first misstatement that the Court found to be actionable as the start date for the Class Period (October 31, 2017, Misstatement 9 in the TAC), Lead Plaintiff's damages expert has estimated that class-wide maximum damages recoverable at trial using the same (entire) stock price declines to be approximately $279 million, without netting of pre-Class Period gains. ¶107. Accordingly, the Settlement recovers a range of approximately 10% to 35% of these estimated damages.

Courts regularly approve settlements with comparable or lower percentage recoveries than obtained here. *See, e.g.*, *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding settlement recovering 8% of estimated damages "equals or surpasses the recovery in many other securities class actions"); *In re Snap Inc. Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb 18, 2021) (finding the relief adequate where the settlement amount represents 7.8% of class's maximum potential aggregate damages, which is "similar to the percent recovered in other court-approved securities settlements"). According to NERA's full-year 2025 report, for cases with total NERA-defined investor losses of between $1 billion and $4.9 billion, the median percentage of recovery from 2016 to 2025 was 1.3% of estimated losses. *See* Ex. 6 at 27. For cases with NERA-defined losses of $5 billion to $9.999 billion, the median percentage of recovery was 0.7%. *See id.* According to Cornerstone Research, "In 2025, the median settlement as a percentage of plaintiff-style damages was 6.5%." *See* Laarni T. Bulan and Eric Tam, *Securities Class Action Settlements – 2025 Review and Analysis* (Cornerstone 2026), Ex. 7 at 7.

In sum, the very substantial recovery supports approval of the fee request.

**2. The Risks of Litigation**

The risk involved in a litigation is also an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379, n.10 (9th Cir. 1995) (finding that attorneys' fees were justified "because of the complexity of the issues and the risks"); *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) ("Given the complexity of the litigation, the significant legal issues facing the Class, and the uncertainty of Rentech's future, continued litigation presented a high risk for Plaintiffs … this factor also supports Lead Counsel's fee request."); *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear'"); *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d at 1047 (noting that the risk of litigation, including the ability to prove loss causation and the risk that Defendants prevail on damages, support the requested fee). As set forth in Section III and V. of the Hoffman Declaration, Plaintiffs and Plaintiffs' Counsel contended with numerous significant and unique challenges throughout the course of this lengthy litigation spanning multiple fora. *See also* Radcliffe Decl.; Settlement Mem., §I.D.1.

As an initial matter, within a month of PERA filing its first amended complaint, a second set of catastrophic fires hit Northern California, requiring an expanded investigation and the preparation of the Second Amended Complaint. ¶24. Approximately a month later, PG&E filed petitions for reorganization under Chapter 11, expanding the scope and complexity of the litigation substantially. ¶ 26. Thereafter, after more than six years of litigation efforts, three amended complaints, and two appeals to the Ninth Circuit Court, the Court granted the District Court Defendants' motions to dismiss the TAC with leave for Plaintiffs to file the Fourth Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws ("FAC"). With respect to Plaintiffs' Exchange Act claims, the Court found that the TAC did not adequately plead that Defendant Kane was the "maker" of the misstatements attributed to her in

accordance with the Supreme Court's decision in *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142–43 (2011) ("[T]he maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."). *See PG&E Corp.*, 806 F. Supp. 3d at 989-92 (finding TAC fails to adequately allege that Kane made Misstatements 2, 4, 5, 9, and 12-19). ¶45. The Court dismissed fifteen of the nineteen challenged Exchange Act statements in the TAC, holding that the majority were either inactionable puffery or were not adequately alleged to be false when made. *Id.* at 992-97. ¶96. Additionally, the Court found loss causation to only be pled as to two of the alleged corrective disclosures. ¶45. The Court also dismissed the Securities Act claims finding that the negligence claims sounded in fraud and that the statements alleged to be materially false and misleading with respect to the Note Offerings were not actionable because, *inter alia*, the allegedly concealed risks were publicly disclosed. *See PG&E Corp.*, 806 F. Supp. 3d at 1005-06. The Court also found that standing was not sufficiently pled for certain offerings. *Id.* at 1009-14.

While Plaintiffs' Counsel worked diligently to overcome these rulings with additional allegations in the FAC, including information obtained through discovery in the Chapter 11 Cases, there was a strong possibility that the Court would reach the same conclusions on the repleaded statements. Indeed, in moving to dismiss the FAC, the Officer Defendants argued that ten of the fourteen statements in the FAC were statements the Court "previously held" to be "either inactionable puffery or . . . not alleged to be misleading," and that the FAC "adds no allegations sufficient to plead these statements were false." ECF No. 328-2 at 14; ¶96. Plaintiffs' Counsel attempted to bolster Plaintiffs' allegations regarding the "maker" of the misstatements in the FAC by pleading documents and information obtained from the Reorganized Debtors during discovery in the Bankruptcy Court. However, the District Court Defendants have since argued that these documents do not demonstrate that any of the Individual Defendants were the "maker" of the misstatements alleged in the FAC. *See* ECF No. 328-2 at 9-14 (arguing the Court should once again reject the FAC's "conclusory" allegations that certain Individual Defendants were required to review and approve the misstatements before they were publicly issued); ¶95.

With regard to alleging and proving scienter, Plaintiffs' Counsel has had the benefit of obtaining substantial discovery in the Chapter 11 Cases. While Plaintiffs' Counsel believe the evidence would be sufficient to sustain Plaintiffs' claims, scienter (and other elements) may be difficult to prove with documents alone and witnesses may not be able to recall specific evidence or events that occurred nearly a decade ago. Indeed, the District Court Defendants would likely seek to introduce evidence that they were unaware of the Company's alleged non-compliance with relevant wildfire safety regulations and rules and, thus, they did not act with the requisite fraudulent intent required for the Exchange Act claims. Moreover, certain of the District Court Defendants would likely argue that they believed PG&E was doing its best to balance wildfire safety with environmental stewardship when trimming or removing trees and vegetation surrounding PG&E equipment. Although the MTD Order sustained those allegations as to all Officer Defendants except Hogan with respect to the surviving statements, it did so on the narrow ground of the core operations doctrine, reasoning that it would be "absurd" to suggest that the Officer Defendants "were not acutely aware of the noncompliance data" given PG&E's criminal history and the magnitude of its vegetation management violations. MTD Order at 37. In moving to dismiss the FAC, the Officer Defendants argued that this "absurdity prong" of the core operations doctrine was limited to vegetation management issues and did not extend to the Camp Fire allegations, because "there are no allegations that any Officer Defendant had access to any information, or otherwise had any reason to be concerned about, tower inspection and maintenance, or the establishment or execution of the shutoff protocol." ECF No. 328-2 at 22. The Officer Defendants further argued that the FAC "does not plead any fact as to any Officer Defendant's specific knowledge of compliance violations or individualized motive to deceive." *Id.* at 22-23; ¶¶98-100.

Leaving aside the difficulties of pleading and proving liability, Plaintiffs and Plaintiffs' Counsel faced significant risks with respect to establishing damages and certifying a class in the Class Action. Notably, in the MTD Order, the Court dismissed all but two of the nine loss causation events pled in the TAC. *See PG&E Corp.*, 806 F. Supp. 3d at 1000-01 ("Plaintiffs have sufficiently pled loss causation as to the May 25, 2018 and June 8, 2018 disclosures."). With

respect to the loss causation events that survived the MTD Order—PG&E and the District Court Defendants, along with their experts, would have continued to argue that there were no damages whatsoever based on the remaining misstatements and loss causation events. Specifically, in a quintessential "battle of the experts," the District Court Defendants will marshal experts to argue that the remaining loss causation events (if any) are not related to the four remaining misstatements and that the prices of PG&E Securities declined for reasons other than those alleged in the FAC. Plaintiffs' Counsel worked hard to counter arguments, and would continue to do so, that the two remaining loss causation events related solely to the North Bay Fires, whereas the four remaining misstatements (Misstatement 9, 12-14), which were made after the North Bay Fires began, related solely to PG&E's compliance at the time the statements were made, providing investors with no assurances as to PG&E's compliance at the time of the North Bay Fires. ¶¶103-109. Defendants also undoubtedly would have continued to argue that the stock price declines reflected the market's reassessment of PG&E's massive potential financial liability under California's inverse condemnation doctrine, the sheer number of fires caused by PG&E equipment, the criminal referrals to district attorneys, and the prospect of billions of dollars in tort liability, which were non-fraud-related components of the price declines that would need to be excluded from any damages calculation. ¶108.

For the same reasons, Plaintiffs also faced substantial challenges in connection with class certification in the Class Action. In the event that the Court decided to dismiss all of the FAC's misstatements and loss causation events, except for those sustained in the MTD Order, certain the District Court Defendants would undoubtedly have raised a "mismatch" argument under *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, 594 U.S. 113 (2021). Under *Goldman*, defendants may rebut the presumption of class-wide reliance under *Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988), by demonstrating that the alleged misrepresentations did not actually maintain inflation in the stock price — and one way to make this showing is to demonstrate a lack of correspondence, or "mismatch," between the content of the alleged front-end misstatements and the content of the back-end corrective disclosures. *Goldman*, 594 U.S. at

124-25. Arguably, the *Goldman* mismatch problem would be acute in this case given the nature of the surviving claims. ¶¶112-115.

Plaintiffs' Counsel worked diligently to achieve a significant result for the Settlement Class in the face of these numerous and varied risks.

**3. The Skill Required and the Quality of Work**

Courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005); *see also Vizcaino,* 290 F.3d at 1048. "This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb 11, 20216).

Labaton Keller Sucharow LLP and Robbins Geller Rudman & Dowd LLP ("Robbins Geller")—firms that practice extensively in the highly challenging field of securities litigation and have skillfully litigated these types of cases in courts across the country through trial (*see* generally Labaton's and Robbins Geller's firm resumes, Exs. 12-E and 13-E)—engaged in a rigorous and concerted effort to obtain the maximum recovery for the Settlement Class, with the assistance of other Plaintiffs' Counsel. This case required a wide ranging and deep investigation spanning years; a thorough understanding of unique and multifaceted factual and legal issues; several rounds of motion to dismiss briefing; advocacy on behalf of the Settlement Class with respect to the Chapter 11 Cases, including efforts to extend the claims bar date, to protect claimants' procedural rights, to seek certification of a proposed class, two appeals to the Ninth Circuit Court of Appeals, and voluminous briefing for dispositive motions and the Reorganized Debtors' various omnibus objections in the Chapter 11 Cases; and the skill to respond to the host of other challenges that Defendants and the Reorganized Debtors raised during the litigation. *See generally* Hoffman Decl. at §III-V. Plaintiffs' Counsel's efforts have resulted in a notable result for the Settlement Class.

Accordingly, the quality of the legal services provided by Plaintiffs' Counsel over the course of this long running case, together with their substantial experience in complex class

actions and commitment to the litigation, enabled Plaintiffs' Counsel to obtain this very favorable Settlement, and support Lead Counsel's request for a 21% fee award. *See CareDx*, 2025 WL 3546227, at *12 (finding that "the rigor of Lead Counsel's work, complexity of securities litigation, and contingent nature of the litigation weigh in favor of final approval," where "Lead Counsel conducted a pre-discovery investigation, engaged in substantial document review, and defended against multiple motions to dismiss"); *see also In re Apple*, 2023 WL 2090981, at *14 (noting class counsel's skill and quality of work supported a fee above the benchmark where the case withstood two motions to dismiss and where "class counsel diligently developed the facts, propounded discovery, took depositions, and engaged a damages consultant, all of which was of great benefit to the class").

The quality of opposing counsel is also important in evaluating the quality of the work done by Plaintiffs' Counsel. *See, e.g.*, *Taylor v. Populus Grp., LLC*, 2023 WL 139898, at *3 (S.D. Cal. Jan. 9, 2023) ("The quality of opposing counsel is relevant to evaluating the skill required and the quality of Class Counsel's work."); *Rentech*, 2019 WL 5173771, at *10 ("Lead Counsel faced a vigorous defense from . . . a respected national law firm . . . . This factor also supports granting the requested fee."); *Heritage Bond*, 2005 WL 1594389, at *12. Here, Plaintiffs' Counsel were opposed by very skilled and highly respected lawyers at Latham & Watkins LLP; Weil, Gotshal & Manges LLP; Simpson Thacher & Bartlett LLP; and Davis Polk & Wardwell LLP, each with well-deserved reputations for vigorous advocacy in the defense of complex civil cases such as this. In the face of this opposition, Plaintiffs' Counsel were able to develop the case so as to obtain a certain and very favorable recovery for the Settlement Class.

**4. The Contingent Nature of the Fee and the Financial Burden**

It has long been recognized that attorneys are entitled to a larger fee when their compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50; *CareDx.*, 2025 WL 3546227, at *12 (finding the "contingent nature of the litigation weigh in favor of final approval"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they

were billing by the hour or on a flat fee."); *see also Zynga,* 2016 WL 537946, at *18 (noting that "when counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award").

The Supreme Court has also emphasized that private securities actions such as this provide "a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc.*, 472 U.S. at 310; *Tellabs, Inc.*, 551 U.S. at 319 (noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions). Yet, vigorous private enforcement of the federal securities laws and state corporation laws can only occur if private plaintiffs can obtain some semblance of parity in representation with that available to large corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and expertise. For example, in *In re BankAtlantic Bancorp, Inc.*, tried by Labaton, a jury rendered a verdict in plaintiffs' favor on liability in 2010. However, in 2011, the district court granted defendants' motion for judgment as a matter of law and entered judgment in favor of defendants on all claims. *See* No. 07–61542–CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011). In 2012, the Eleventh Circuit affirmed the district court's ruling, finding that there was insufficient evidence to support a finding of loss causation. *See In re BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *see also In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million).

Lead Counsel is aware of many other hard-fought lawsuits where excellent professional efforts by members of the plaintiff's bar produced no fee for counsel. *See, e.g.*, *Glickenhaus &*

*Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction under *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation). As the court in *In re Xcel Energy, Inc. Securities, Derivative & "ERISA" Litigation,* 364 F. Supp. 2d 980 (D. Minn. 2005) recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Id.* at 994.

Moreover, there were at least two securities class action trials this year in which the jury ruled in favor of defendants on all grounds. *See In re Vaxart, Inc. Sec. Litig.*, No. 20-cv-05949-VC, ECF No. 717 (N.D. Cal. Apr. 28, 2026), (jury verdict form finding that plaintiffs failed to prove their Exchange Act claims) (Ex. 11); *see also Ramirez v. Exxon Mobil Corp.*, No. 3:16-cv-03111, ECF No. 390 (N.D. Tex. May 14, 2026), (jury verdict form finding that plaintiffs failed to prove their Exchange Act claims) (Ex. 11).

Here, because Plaintiffs' Counsel's fee was contingent,[7] the only certainty was that there would be no fee without a successful result and that such result would only be realized after significant amounts of time, effort, and expense had been expended, unlike counsel for defendants, who are paid and reimbursed for their expenses on a current basis. In the face of very real uncertainties regarding the outcome of the case, Plaintiffs' Counsel prosecuted the Class Action and the class's claims in the Chapter 11 Cases knowing that the litigation could last for

[7] PERA's liaison bankruptcy counsel, Michelson Law Group and Law Offices of Miriam Hiser (which took over for Randy Michelson after her retirement), have been advanced their fees and expenses on an ongoing basis by Labaton. Lowenstein Sandler's expenses have been advanced by Labaton, but not their fees.

years and would require devotion of a substantial amount of attorney time and a significant advance of litigation expenses with no guarantee of compensation or reimbursement.

**5. Reaction of the Settlement Class to Date**

Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See CareDx*, 2025 WL 3546227, at *12 ("the fact that no Class Members objected weighs in favor of approving the attorneys' fees award"); *Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in determining the proper fee award."); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods Liab. Litig.*, 2017 WL 1047834, at *4 (N.D. Cal. Mar. 17, 2017) (considering the strong positive response as a factor favoring the requested fee).

Here, as of June 18, 2026, A.B. Data has provided 513,433 potential Settlement Class Members and their Nominees with copies of the notice. *See* Declaration of Adam D. Walter Regarding (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received to Date, dated June 18, 2026, Ex. 8 ("Mailing Decl.") at ¶¶2-10. The long-form Notice and Claim Form, along with the Stipulation and other relevant documents, were made available on a website dedicated to the litigation. *Id.* at ¶12. Additionally, the Court-approved Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PR Newswire*. *Id.* at ¶11. Although the objection deadline is not until July 6, 2026, to date no objections to the requested amount of attorneys' fees and expenses have been filed with the Court or received by Lead Counsel.[8]

**E. A Lodestar Cross-check Confirms that the Requested Fee Would Be Very Reasonable**

Although an analysis of lodestar is not required for an award of attorneys' fees in the Ninth Circuit, it is often considered to ensure that an awarded fee would be reasonable. *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of

[8] Lead Counsel will address any future objections in its reply papers, which will be filed with the Court on or before August 11, 2026.

the fee request with a lodestar amount can demonstrate the fee request's reasonableness.").

"Under the lodestar approach, a court calculates the 'lodestar figure' by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Rain Oncology*, 2026 WL 1113721, at *7; *In re Apple*, 2023 WL 2090981, at *12 (same). Plaintiffs' counsel's combined "lodestar," derived by multiplying the hours worked on the litigation by each attorney and professional by their hourly rates for 2025, is approximately $45,882,048.75.[9] *See* Exs. 12-A; 13-A; and 14-A; *see also* Ex. 15 (Summary Table of Lodestars & Expenses). This lodestar is a function of the extensive and rigorous litigation efforts dedicated by counsel. As detailed in the Hoffman Declaration and in the accompanying individual firm fee and expense declarations submitted by Plaintiffs' counsel, more than approximately 60,934.85 hours of attorney and professional time were expended for the benefit of the Settlement Class. *Id*. Consistent with the Northern District of California Procedural Guidance for Class Action Settlements, Plaintiffs' counsel's declarations include tables showing counsel's time broken down by different categories of work. Exs. 12-B; 13-B; and 14-B.

Plaintiffs' counsel's rates are reasonable and range from $800 to $1,625 per hour for partners, $545 to $1,200 per hour for of counsels, $280 to $895 for associates, and $335 to $505 for staff and contract attorneys. *See* Exs. 12-A; 13-A; and 14-A; *see, e.g.*, *Pardi v. Tricida, Inc.*, 2025 WL 2988737, at *10 (N.D. Cal. Oct. 23, 2025) (finding rates ranging from $380 to $1,625 per hour reasonable and commensurate with market rates). Lead Counsel submits that these rates are comparable to or less than those used by peer defense-side law firms litigating matters of similar magnitude and complexity. Sample defense firm rates in 2025, gathered by Labaton annually from bankruptcy court filings nationwide, often exceeded these rates. Ex. 16; ¶157.

---

[9] The Supreme Court and others have held that the use of current rates is proper since they compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Rutti v. Lojack Corp. Inc*., 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to current, not historic, hourly rates"). Given that the Settlement was reached in 2025, counsel have calculated their lodestar using rates from 2025.

This substantial work of Plaintiffs' counsel was necessary for the success of the litigation. As set forth in detail in the Hoffman Declaration, Plaintiffs' Counsel: (i) conducted an extensive years-long investigation of the claims and defenses at issue; (ii) prepared and filed four separate amended complaints, which expanded the scope of the initial complaint by adding detailed allegations in support of Plaintiffs' claims; (iii) opposed the District Court Defendants' extensive motions to dismiss the Third Amended Complaint through two rounds of briefing; (iv) vigorously represented and advocated on behalf of the Settlement Class with respect to the unusually complex Chapter 11 Cases, including efforts to extend the claims bar date, to protect claimants' procedural rights, to seek certification of a proposed class, object to confirmation of PG&E's plan of reorganization, two appeals to the Ninth Circuit Court of Appeals, and opposing the Reorganized Debtors' securities claims omnibus objections, including their sufficiency objection; (v) propounded discovery requests on the Reorganized Debtors, and others, and responded to their discovery requests, including defending four depositions of Plaintiffs; (vi) reviewed tens of thousands of documents provided by the Reorganized Debtors and others; (vii) consulted with experts in the fields of, among others, damages, loss causation and market efficiency, ethics and bankruptcy to oppose the motion to stay before the District Court, D&O Insurance, wildfires and vegetation management, and an expert to oppose the Reorganized Debtors' motion to approve the ADR Procedures in the Chapter 11 Cases; and (viii) engaged in vigorous and lengthy mediated settlement discussions over the span of several years and with multiple mediators. *See generally* Hoffman Decl. at §III.-IV.; *see also* Radcliffe Decl. The substantial time devoted reflects the effort needed to prosecute the claims and bring them to a favorable resolution.

Here, the requested fee of 21%, if awarded, would represent a *negative*, fractional "multiplier" of approximately 0.46, *i.e.,* 46% of Plaintiffs' counsel's combined lodestars. Ex. 15; ¶158. The Ninth Circuit has recognized that attorneys in contingent common fund cases are frequently awarded a positive multiple of their lodestar, rewarding them "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino,* 290 F.3d at 1051. For example, the district court in *Vizcaino* approved a fee that reflected a multiple of 3.65 times counsel's lodestar. *Id*. The Ninth Circuit affirmed, holding that

the district court correctly considered the range of multiples applied in common fund cases, and noting that a range of lodestar multiples from 1.0 to 4.0 are frequently awarded. *Id.*; *Pardi*, 2025 WL 2988737, at *10 (N.D. Cal. Oct. 23, 2025) ("In similar cases, courts, including this Court, have approved multipliers ranging from 1.0 to 4.0."); *see also Lamartina v. VMware, Inc.*, No. 5:20-02182-EJD, slip op. ECF No. 192 (N.D. Cal. Mar. 31, 2025) (requesting 25% fee for $102.5 million settlement with 1.50 multiplier) and ECF No. 196 (order awarding 25% in fees) (Ex. 11); *In re Alphabet Inc. Sec. Litig.,* No. 18-cv-06245, slip op. at 12-13 (N.D. Cal. Sept. 30, 2024) (approving fee in $350 million settlement representing a 4.58 multiplier) (Ex. 11).

With respect to a *negative* multiplier, courts have reasoned that a fee that falls below counsel's lodestar supports the reasonableness of the award. *See, e.g.*, *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (finding the fee request reasonable where the multiplier was negative); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *8 (C.D. Cal. Oct. 13, 2015) ("A negative multiplier in this context 'suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel.'"); *Hayden v. Portola Pharms. Inc.*, 2023 WL 2375242, at *3 (N.D. Cal. Mar. 6, 2023) (approving fee request and noting that the negative lodestar multiplier "confirms the reasonableness of the requested fee").

Furthermore, additional work will be required of Lead Counsel on an ongoing basis, including: correspondence with Settlement Class Members; supervising the claims administration process being conducted by the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Settlement Class Members who have submitted valid Claim Forms. However, Lead Counsel will not seek payment for this additional work.

## II. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's application includes a request for payment of Litigation Expenses, which were reasonably incurred and necessary to prosecute the Class Action and the Chapter 11 Cases. Plaintiffs' counsel collectively incurred $4,432,711.53 in expenses. *See* Exs. 12-C; 13-C; 14-C;

*see also* Ex. 15.[10] These expenses are outlined in Plaintiffs' counsel's individual fee and expense declarations submitted to the Court concurrently herewith. This amount is below the $5,715,000 maximum that the notices informed potential Settlement Class Members counsel may apply for. To date, there has been no objection to this request.

"Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent,* 2013 WL 621865, at *5. In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically paid by clients in the non-contingent marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'").

The amount of Litigation Expenses here is consistent with the stage of the litigation. Plaintiffs' counsel have incurred considerable expenses related to, among other things, expert and consultant fees, litigation support, mediation fees, expenses from work-related travel for hearings and depositions, and online factual and legal research fees. ¶¶163-169.

The largest component of Plaintiffs' counsel's expenses (*i.e.*, $2,480,553.38, or approximately 56% of total expenses) was incurred for experts. Counsel retained, among others: (i) damages consultants and experts to analyze damages, loss causation, market efficiency, and provide expert reports and opinions on issues related to elements of Plaintiffs' claims; (ii) ethics and bankruptcy experts to oppose the motion to stay before the District Court; (iii) a D&O Insurance expert; (iv) a wildfire and vegetation maintenance expert; and (v) a class action expert to oppose the Reorganized Debtors' motion to approve the ADR Procedures. *See* Ex. 12-C, ¶6(c); Ex. 13-C, ¶6(d). These experts were key to the prosecution of the claims.

---

[10] Expenses reimbursed from the Debtors' estate in response to PERA's August 2020 motion for fees and expenses filed in the Chapter 11 Cases are not being requested. The expenses of Lowenstein Sandler are being reported by Lowenstein, however they have been advanced by Labaton and, to the extent awarded by the Court, Labaton will be reimbursed for the payments.

Litigation Support was another significant component of the expenses ($1,083,273.70, or approximately 24% of the total). These expenses relate to document hosting and management related to electronic discovery, and to Lead Counsel's retention of A.B. Data to host a website with a portal to allow Rescission or Damages Claimants to adopt PERA's complaint and respond to PG&E's objections through a joinder with PERA. (This work predates A.B. Data's appointment as Claims Administrator and is distinct from the Notice and Administration Expenses it will be paid pursuant to the Stipulation.) PERA's production documents were hosted on a Relativity platform, and Robbins Geller hosted the Securities Act Plaintiffs documents, and Defendants' and non-parties' productions, on their Relativity platform (at below market rates). *See* Exs. 12 at ¶6(e); Ex. 13 at ¶6(g). The databases hosted were over 35 terabytes and contained approximately 29 million pages, with an additional copy replicated to a separate data center and also backed up in secondary storage. Plaintiffs' Counsel used these electronic databases to, among other things: (i) maintain potentially relevant documents collected from Plaintiffs for review and production in response to Defendants' and PG&E's discovery demands; (ii) maintain the electronic database through which tens of thousands of documents produced by Reorganized Debtors and others were reviewed; (iii) process documents so that they would be in a searchable format, including the conversion and upload of any hard copy documents; and (iv) apply data analysis tools to focus the review on the most significant documents to efficiently target information counsel needed to support their allegations. ¶165.

Lead Counsel also incurred a total of $278,223.90 (or approximately 6% of expenses) in connection with Plaintiffs' respective share of the fees associated with the multiple mediations, including the most recent mediation in October 2025. Ex. 12 at ¶6(f). The expenses also include approximately $175,245.92 for work-related transportation expenses, meals, and lodging related to, among other things, traveling in connection with court hearings, depositions, client meetings, the mediations, and working late hours. (Any first-class airfare has been reduced to be comparable to economy rates.) Ex. 12 at ¶6(g); Ex. 13 at ¶6(b); Ex. 14 at ¶7(f).

Other expenses for which Plaintiffs' counsel seek payment are the types of expenses that are necessarily incurred in complex commercial litigation and routinely paid in non-contingent

cases. These expenses include, among others, online legal and factual research, court and service fees, transcript costs, duplicating costs, and overnight delivery expenses. All of the Litigation Expenses incurred by Plaintiffs' counsel were reasonable and necessary for the successful litigation of the Class Action and the Chapter 11 Cases.

## III. LEAD PLAINTIFF'S PSLRA REQUEST FOR REIMBURSEMENT

The PSLRA, 15 U.S.C. §78u-4(a)(4), permits an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party. Here, Lead Plaintiff is seeking $22,970 in expenses related to the time it dedicated to pursuing the Settlement Class's claims. *See* Ex. 1 at ¶¶11-13. Consistent with the Northern District of California Guidelines, Lead Plaintiff has submitted a declaration (*see* Ex. 1) setting forth the time and effort it dedicated during the course of this long-running case. Lead Plaintiff engaged in discovery, which required responding to discovery requests, producing documents, and sitting for a deposition. Lead Plaintiff was in regular contact with counsel, reviewed court filings, consulted with counsel during the course of the mediation process and approved of the Settlement. *Id.* Lead Plaintiff's efforts required it to devote considerable time and resources to pursuing the Settlement Class's claims that would otherwise have been devoted to its regular professional endeavors.

Many cases have approved reasonable payments to compensate representatives for the time, effort, and expenses devoted on behalf of a class. *See, e.g.*, *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *10 ("courts have awarded reasonable payments to compensate class representatives for the time, effort, and expenses devoted to litigating on behalf of the class" and awarding State of Connecticut $30,983.99 related to its time); *In re Intuitive Surgical Sec. Litig.*, Case No. 5:13-cv-01920-EJD, slip op. at 4 (N.D. Cal. Dec. 20, 2018) (Ex. 11) (awarding $49,754.18 and $9,100.00 to class representatives). Lead Counsel respectfully submits that the amount sought here is reasonable based on Lead Plaintiff's active and diligent involvement.

## CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully requests that the Court award: (i) attorneys' fees of 21% of the Settlement Fund, which includes accrued interest; (ii) Litigation

Expenses in the amount of $4,432,711.53, plus accrued interest; and (iii) $22,970 to Lead Plaintiff pursuant to the PSLRA. A proposed order will be submitted with Lead Plaintiff's reply papers, after the deadline for objecting has passed.

Dated: June 19, 2026

Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**

By: /s/ *Thomas G. Hoffman, Jr.*

Thomas A. Dubbs (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Thomas G. Hoffman, Jr. (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
tdubbs@labaton.com
mcanty@labaton.com
thoffman@labaton.com

*Counsel for Lead Plaintiff the Public Employees Retirement Association of New Mexico and Lead Counsel for the Class*

JAMES M. WAGSTAFFE (#95535)
**ADAMSKI, MORISKI, MADDEN, CUMBERLAND & GREEN LLP**
Mailing Address: P.O. Box 3835
San Luis Obispo, CA 93403-3835
Physical Address: 6633 Bay Laurel Place
Avila Beach, CA 93424
Telephone: (805) 543-0990
Facsimile: (805) 543-0980
wagstaffe@ammcglaw,com

*Liaison Counsel for PERA and the Class*

WILLOW E. RADCLIFFE (#200089)
KENNETH J. BLACK (#291871)
HADIYA K. DESHMUKH (#328118)
HAILEY S. ZANUTTO (#358143)
**ROBBINS GELLER RUDMAN & DOWD LLP**
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone 415-288-4545
willowr@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com

hzanutto@rgrdlaw.com

*Additional Counsel for the Securities Act Subclass*

THOMAS C. MICHAUD
**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**
79 Alfred Street
Detroit, MI 48201
Telephone: (313) 578-1200
Facsimile: (313)578-1201
tmichaud@vmtlaw.com

*Additional Counsel for the Securities Act Subclass*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2026, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered participants only.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 19, 2026.

/s/ *Thomas G. Hoffman, Jr.*
Thomas G. Hoffman, Jr.